UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ROME MEMORIAL HOSPITAL<br>1500 North James St.<br>Rome, New York 13440<br><br>    Plaintiff,<br><br>    v.<br><br>MICHAEL O. LEAVITT, Secretary,<br>Department of Health and Human<br>    Services<br>200 Independence Avenue, S.W.<br>Washington, D.C. 20201,<br><br>    Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>) Civil Action No.<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## COMPLAINT

Plaintiff, Rome Memorial Hospital, by and through its undersigned attorneys, brings this action against defendant Michael O. Leavitt, in his official capacity as Secretary of the United States Department of Health and Human Services, and states as follows:

### A.   Jurisdiction and Venue

1.   This action arises under Title XVIII of the Social Security Act, 42 U.S.C. §§ 1395 et seq. (the "Medicare statute"), and the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 551 et seq.

2.   This Court has jurisdiction under 42 U.S.C. § 1395oo(f) and 28 U.S.C. § 1361.

3. Venue lies in this judicial district under 42 U.S.C. § 1395oo(f) and 28 U.S.C. § 1391.

**B.  Parties**

4. Rome Memorial Hospital ("plaintiff") is a 166 bed, not-for-profit, acute care hospital located in Rome, New York. It furnishes inpatient and outpatient hospital services to, *inter alia*, patients entitled to benefits under the Medicare program.

5. Michael O. Leavitt is the Secretary of the Department of Health and Human Services (the "Secretary"), the officer responsible for the administration of the Medicare statute. The Secretary has delegated responsibility for most of the administration of the Medicare program to the Centers for Medicare & Medicaid Services ("CMS"), an agency within the Department of Health and Human Services. Before June 14, 2001, CMS was known as the Health Care Financing Administration ("HCFA"). In this complaint, plaintiff will refer to the agency as CMS or HCFA, as appropriate, depending on the context.

**C.  General Background Regarding the Medicare Program**

6. The Medicare statute establishes a system of health insurance for the aged, the disabled, and individuals afflicted with end-stage renal disease. Under Part A of the Medicare statute, an eligible Medicare beneficiary is entitled to have payment made by the Medicare program on his or her behalf for, inter alia, inpatient hospital services provided to him or her by a hospital participating in the Medicare program as a provider of services.

7.  The Secretary, through fiscal intermediaries, makes payment directly to participating providers for covered services furnished to Medicare beneficiaries. 42 U.S.C. § 1395h.

8.  Pursuant to 42 U.S.C. § 1395cc, plaintiff entered into a written agreement with the Secretary to provide hospital services to eligible individuals. At all relevant times, plaintiff operated a "hospital" as defined in the Medicare statute (42 U.S.C. § 1395x(e)) and was a "provider of services" participating in the Medicare program within the meaning of 42 U.S.C. § 1395x(u) and 42 C.F.R. § 489.2(b)(1).

9.  From the inception of the Medicare program until 1983, the Medicare program reimbursed providers of inpatient hospital services, such as plaintiff, for their "reasonable costs" incurred in providing services to Medicare patients, in accordance with regulations adopted by the Secretary. 42 U.S.C. §§ 1395f(b), 1395x(v)(1)(A).

10. Effective with cost reporting periods beginning on or after October 1, 1983, Congress adopted a prospective payment system ("PPS") to reimburse hospitals, such as plaintiff, for inpatient hospital operating costs. *See* 42 U.S.C. § 1395ww(d). Under PPS, hospitals are paid standardized amounts for inpatient stays based on diagnosis-related groups, subject to certain payment adjustments. *Id. See* Part E *infra.*

11. Payment to providers of services is commonly carried out by Medicare fiscal intermediaries, acting as agents of the Secretary pursuant to contracts with him. 42 U.S.C. § 1395h.

12. At the close of its fiscal year ("FY"), a hospital must submit a "cost report" showing both the cost incurred by it during the fiscal year and the appropriate portion of those costs to be allocated to Medicare. 42 C.F.R. §§ 413.24 and 413.50. The hospital's intermediary is required to review and audit the cost report and issue a Notice of Program Reimbursement ("NPR"), which reflects the Intermediary's final determination of the total Medicare reimbursement due the hospital for the cost reporting period.

D. **Procedure for Administrative and Judicial Review**

13. If a hospital is dissatisfied with its NPR, the hospital has a right to obtain a hearing before the Provider Reimbursement Review Board ("Board" or "PRRB") by filing an appeal with the Board within 180 days of receiving its NPR. *See* 42 U.S.C. § 1395oo.

14. Alternatively, the hospital may request a reopening of its NPR within three years of the date of the hospital's receipt of the NPR. 42 C.F.R. § 405.1885(a). Upon completion of a reopening, the intermediary will issue a revised NPR. The Hospital has a right to obtain a hearing before the Board regarding issues addressed in the revised NPR by filing an appeal with the Board within 180 days of receiving the revised NPR. 42 C.F.R. §§ 405.1835, 405.1841(a)(1), and 405.1889.

15. Regardless whether a hospital filed for a Board hearing or sought reopening, regulations adopted by the Secretary required an intermediary to reopen an NPR if within three years of the date of receipt of the NPR, CMS notified the intermediary that the NPR was in any way inconsistent with the applicable laws,

regulations or general instructions issued by CMS ("Mandatory Reopening").
42 C.F.R. § 405.1885(b) (2000).

16. The Board is authorized to make substantive decisions concerning Medicare reimbursement appeals and to decide questions relating to its jurisdiction. 42 C.F.R. § 405.1873. A decision of the Board disposing of an appeal on substantive or jurisdictional grounds constitutes a final administrative decision of the Secretary unless the Secretary reverses, affirms, or modifies the decision within 60 days of the hospital's notification of the Board's decision. 42 U.S.C. § 1395oo(f)(1); 42 C.F.R. §§ 405.1875 and 405.1877.

17. The Secretary has delegated his authority under the statute to review PRRB decisions to the CMS Administrator. A decision of the CMS Administrator to reverse, affirm, or modify the Board's decision constitutes the final administrative decision of the Secretary.

18. A hospital may obtain judicial review of a final administrative decision of the Secretary, including a decision relating to the jurisdiction of the Board, by filing suit within 60 days of receipt of the decision in the United States District Court for the judicial district in which the hospital is located or in the United States District Court for the District of Columbia. 42 U.S.C. § 1395oo(f).

19. Judicial relief in the nature of mandamus is also available where an intermediary failed to perform a Mandatory Reopening required under 42 C.F.R. § 405.1885(b). *Monmouth Medical Center v. Thompson*, 257 F.3d 807 (D.C. Cir.

2001) ("*Monmouth*"). See also *In re Medicare Reimbursement Litigation (Baystate Medical Center v. Leavitt)*, 414 F.3d 7 (D.C. Cir. 2005) ("*Baystate*").

### E. Medicare's Policies Regarding Payment for the Disproportionate Share Hospital Adjustment

20.     Under PPS, Medicare's payments to hospitals for inpatient operating costs are based on predetermined, nationally applicable rates per case, subject to certain payment adjustments. 42 U.S.C. § 1395ww(d); 42 C.F.R. Part 412. One of these adjustments, known as the disproportionate share hospital or "DSH" adjustment, provides for additional payments to PPS hospitals that serve a disproportionate share of low-income patients. See 42 U.S.C. § 1395ww(d)(5)(F).

21.     Under 42 U.S.C. § 1395ww(d)(5)(F)(vi), the Secretary is required to make an add-on payment to the standardized case payments for PPS hospitals serving a "significantly disproportionate number of low-income patients." Whether a hospital serves a significantly disproportionate number of low income patients depends on its disproportionate patient percentage, which is computed for a given cost-reporting period based on the sum of two fractions defined in the statute. For one of these fractions, known as the "Medicaid Low Income Proxy" or the "Medicaid Percentage," it is necessary to determine the number of inpatient days that patients who "were eligible for medical assistance [*i.e.* Medicaid]" received services at the hospital. 42 U.S.C. § 1395ww(d)(5)(F)(vi)(II). In general, the more Medicaid inpatient days that a hospital has, the larger its Medicare DSH adjustment will be. For the other fraction, it is necessary to determine the number of inpatient days that patients who "were entitled to supplemental security income benefits" and to

Medicare benefits under Part A received services at the hospital. 42 U.S.C. § 1395ww(d)(5)(F)(vi)(I).

22.  A final rule adopted by the Secretary in 1986 established the government's policy for the methodology to be used to count a PPS hospital's Medicaid inpatient days for purposes of determining the DSH adjustment. *See* 51 Fed. Reg. 16772 (May 6, 1986), as codified at 42 C.F.R. § 412.106 (1986). This rule limited the number of Medicaid inpatient days to be used to compute the Medicaid Percentage by allowing hospitals to include only the days:

> for which benefits are payable under [Medicaid]. Any day of a Medicaid patient's hospital stay that is not payable by the Medicaid program will not be counted as a Medicaid patient day since the patient is not considered eligible for Medicaid coverage on those days.

51 Fed. Reg. 16777. Thus, in the final rule the Secretary turned upside down the statutory concept of days for which patients were eligible for Medicaid by deeming "eligible" Medicaid days to be days for which Medicaid paid. Accordingly, this final rule impermissibly limited the effect of the DSH statute by allowing hospitals to include only "paid" Medicaid inpatient days, and not all inpatient days for which patients were eligible for Medicaid, when computing the DSH adjustment (hereinafter referred to as the Secretary's "paid days" policy).

23.  The United States Courts of Appeals for the Fourth, Sixth, Eighth, and Ninth Circuits invalidated the "paid days" policy. *See Jewish Hosp., Inc. v. Secretary of Health and Human Services*, 19 F.3d 270 (6th Cir. 1994); *Deaconess Health Serv. Corp. v. Shalala*, 83 F.3d 1041 (8th Cir. 1996); *Legacy Emanuel Hosp. and Health Ctr. v. Shalala*, 97 F.3d 1261 (9th Cir. 1996); *Cabell Huntington Hosp.*

*v. Shalala*, 101 F.3d 984 (4th Cir. 1996). Each of these courts held that the final rule limiting the number of Medicaid inpatient days to those for which payment was made by Medicaid was inconsistent with the Medicare statute on which it was based. No United States Court of Appeals has upheld the validity of the DSH "paid days" rule.

24. As a result of these four circuit court decisions, the HCFA Administrator formally changed the government's policy in a HCFA Ruling published in accordance with 42 C.F.R. § 401.108. This Ruling, HCFAR 97-2, was dated February 27, 1997 and provides that, for purposes of the "Medicaid Low Income Proxy," all inpatient hospital days when services were provided to patients **eligible** for Medicaid would be counted, regardless whether the hospital actually received payment from Medicaid for the services rendered on those days (hereinafter referred to as the Secretary's "eligible days" policy). A copy of HCFAR 97-2 is attached hereto as Exhibit A.

25. By its terms, HCFAR 97-2 is binding on "all HCFA components, Medicare contractors, the Provider Reimbursement Review Board, the Medicare Geographic Classification Review Board, the Departmental Appeals Board, and administrative law judges who hear Medicare appeals."

26. The Secretary conceded in HCFAR 97-2 that his "paid days" policy was "contrary to the applicable law in four judicial circuits" and acquiesced in those decisions on a national basis.

27. HCFAR 97-2 also explicitly provides that (1) it is effective for "all cost-reporting periods beginning on or after February 27, 1997" and (2) that all eligible days "may be included" for "cost reports that are settled by fiscal intermediaries on or after" February 27, 1997. However, the Secretary limited the applicability of HCFAR 97-2 to earlier cost years, stating that it would only apply to "hospital cost reports which have been settled prior to the effective date of this ruling, but for which the hospital has a jurisdictionally proper appeal pending on this issue."

28. HCFAR 97-2 also explicitly states that HCFA will not reopen "settled cost reports based on [the DSH] issue." This provision, known as the "reopening prohibition," was invalidated by the United States Court of Appeals for the District of Columbia Circuit in *Monmouth*, 257 F.3d 807 (D.C. Cir. 2001). The Court invalidated the "reopening prohibition" because it found that, by issuing HCFAR 97-2, the Secretary conceded that DSH payment determinations made under his "paid days" policy were contrary to law. Therefore, the Court held that the "reopening prohibition" was invalid because it conflicted with 42 C.F.R. § 405.1885(b), which required reopening of payment determinations that are inconsistent with the applicable laws, regulations, or general instructions. *Monmouth*, 257 F.3d at 814-815. Accordingly, the Court found that the Secretary was required under 42 C.F.R. § 405.1885(b) to reopen the cost reports at issue in that case to correct the DSH payment and that each of the hospitals in that case

was entitled to a writ of mandamus requiring the Secretary to order his intermediaries to do so.

29. Following its decision in *Monmouth,* the Court of Appeals in *Baystate* further clarified the extent of each intermediary's duty to reopen NPRs pursuant to 42 C.F.R. § 405.1885(b). *Baystate,* 414 F.3d 7 (D.C. Cir. 2005). In *Baystate,* the hospital providers took no actions to either appeal to the PRRB or request a reopening from their intermediary regarding DSH adjustment determinations that were contrary to the "eligible days" policy, but that were issued by their intermediary before HCFAR 97-2. The Court clearly determined that since 42 C.F.R. § 405.1885(b) does not require hospitals to take any action to obtain reopening under that provision, the Secretary was still required under 42 C.F.R. §405.1885(b) to cause the intermediary to reopen DSH adjustment determinations contrary to the "eligible days" policy, regardless of whether the hospitals filed a reopening request or a PRRB appeal on the issue. *Baystate,* 414 F.3d 11-12.

F.  **Facts Applicable to Plaintiff**

30. On April 29, 1998, plaintiff's Medicare intermediary issued an NPR for plaintiff's FY 1995. The NPR incorporated a DSH adjustment determination that computed Medicaid eligible days consistent with the "paid days" policy of the Secretary. Thus, the DSH adjustment did not include all Medicaid eligible days as required by the Medicare statute.

31. Plaintiff requested reopening of its FY 1995 NPR within three years after that NPR was issued. Plaintiff's letter requested that additional Medicaid

eligible days be included in the calculation of the DSH adjustment. This request was after the Secretary conceded that his "paid days" policy was unlawful.

32. The intermediary granted the reopening request and issued a revised NPR dated July 23, 2001 that adjusted plaintiff's DSH payment to include additional Medicaid eligible days consistent with the Secretary's "paid days" policy. The intermediary did not adjust the plaintiff's DSH payment to include Medicaid eligible days for which Medicaid had not made payment.

33. By letter dated July 30, 2001, plaintiff filed a request for hearing before the PRRB to appeal the revised NPR. Plaintiff specifically appealed the DSH adjustment reflected in the revised NPR, contending that it should include all Medicaid eligible days, whether paid or unpaid, in accordance with the Secretary's "eligible days" policy.

34. The PRRB assigned this appeal PRRB Case No. 01-3257. Subsequently, the intermediary contested the PRRB's jurisdiction to hear the appeal. Plaintiff opposed the intermediary's jurisdictional challenge and submitted to the PRRB a brief in support of jurisdiction. By letter dated February 12, 2004, the PRRB determined that it had jurisdiction to hear the appeal. A copy of the PRRB's letter is attached hereto as Exhibit B.

35. Subsequent to the PRRB's determination on jurisdiction, plaintiff and the intermediary reached agreement on the total number of plaintiff's Medicaid eligible days, which included the total number of paid and unpaid days. The parties submitted a stipulation of facts including the agreed number of Medicaid eligible

days and the resulting increase in plaintiff's DSH adjustment payment. The PRRB issued its decision on the merits of plaintiff's appeal on May 25, 2005, ordering the intermediary to include in the DSH adjustment all of plaintiff's Medicaid eligible days set forth in the stipulation of the parties. A copy of the PRRB's decision is attached hereto as Exhibit C.

36. By letter dated June 6, 2005, the Intermediary requested that the CMS Administrator review the PRRB's decision, stating that it disagreed with the PRRB's determination that it had jurisdiction over plaintiff's appeal. The Administrator accepted review of the PRRB decision. By letter dated June 29, 2005, plaintiff submitted comments to the Administrator supporting the PRRB's determination that it had jurisdiction to hear the instant case.

37. By letter dated July 29, 2005, the Administrator issued its final administrative decision, which vacated the Board's decision. The Administrator concluded that the Board did not have jurisdiction over the appeal. A copy of the Administrator's decision is attached hereto as Exhibit D.

38. This action is timely filed within 60 days of plaintiff's August 4, 2005 receipt of the July 29, 2005 Administrator's decision to vacate the PRRB's decision. Therefore, this Court has jurisdiction to hear this case under 42 U.S.C. § 1395oo(f).

39. This Court also has jurisdiction to hear this case under 28 U.S.C. § 1361 because plaintiff is entitled to mandamus relief under the case law of this Circuit. The Secretary and his agent, plaintiff's intermediary, were required by 42 C.F.R. § 405.1885(b) to reopen plaintiff's FY 1995 NPR to correct the DSH

adjustment determination that was inconsistent with applicable law. *See* ¶ 16, 18, 27 and 28, *supra*. The Secretary and the intermediary have refused to follow the then-existing mandatory regulatory directive to reopen intermediary determinations upon notice of inconsistency with law, regulations, or general instructions in order to correct the number of "eligible days." *See Baystate and Monmouth*.

## COUNT I

40. Plaintiff hereby incorporates paragraphs 1-39 herein.

41. Plaintiff's PRRB appeal concerned an issue that was addressed in its revised NPR. Under the regulations, the PRRB had jurisdiction to hear plaintiff's appeal. 42 C.F.R. §§ 405.1835, 405.1841(a)(1), and 405.1889.

42. The Administrator's decision that the PRRB lacks jurisdiction over plaintiff's appeal contesting the total number of eligible Medicaid days to be used in the DSH adjustment is contrary to law, arbitrary and capricious, and lacking in substantial evidence. The decision is defective for many reasons, including that it does not follow the Secretary's duly promulgated regulations.

## COUNT II

43. Plaintiff hereby incorporates paragraphs 1-42 herein.

44. Plaintiff is entitled to mandamus relief under the *Monmouth* and *Baystate* decisions because:

   a. plaintiff has exhausted all administrative remedies and done all it can to vindicate its right to reopening in its effort to obtain proper

    Medicare DSH adjustment payments for FY 1995 under the Secretary's "eligible days" policy;

b. plaintiff's FY 1995 NPR was issued shortly after the issuance of HCFAR 97-2 and was subject to reopening under 42 C.F.R. § 405.1885(b); and

c. plaintiff's intermediary, as the Secretary's agent, had a non-discretionary duty to reopen plaintiff's FY 1995 cost report and to correct its improper Medicare DSH adjustment payment determinations in accordance with the Secretary's "eligible days" policy.

## COUNT III

45. Plaintiff hereby incorporates by reference paragraphs 1-44 herein.

46. Plaintiff is entitled to obtain proper Medicare DSH payment for FY 1995 under the Medicare statute and the Secretary's "eligible days" policy.

### G. **Requested Relief**

WHEREFORE, plaintiff requests:

1. a declaration that the Administrator's decision is contrary to law, arbitrary and capricious, and lacking in substantial evidence;

2. an order requiring the Secretary to recalculate plaintiff's Medicare DSH adjustment payment for FY 1995 using all of plaintiff's eligible Medicaid days, regardless of whether Medicaid made payment for the days or not, consistent with the Board's decision.

3. the issuance of a writ of mandamus requiring the Secretary to order plaintiff's intermediary, or its successor in interest, to reopen plaintiff's Medicare cost report for FY 1995 and recalculate plaintiff's FY 1995 Medicare DSH adjustment payment using the Secretary's "eligible days" policy in accordance with HCFAR 97-2;

4. legal fees and costs of suit incurred by plaintiff; and

5. such other relief as this Court may consider appropriate.

Respectfully submitted,

Dated: September 30, 2005

*/s/ Christopher L. Crosswhite*
Christopher L. Crosswhite
D.C. Bar No. 450927
DUANE MORRIS LLP
1667 K Street, NW, Suite 700
Washington, D.C. 20006
Tel. (202) 776-7846

Attorneys for Plaintiff

Of Counsel:

Joanne B. Erde, P.A.
DUANE MORRIS LLP
200 S. Biscayne Blvd., Suite 3400
Miami, FL 33131
Tel. (305) 960-2218

MIA\158159.2