DEPARTMENT OF HEALTH & HUMAN SERVICES
Centers for Medicare & Medicaid Services
7500 Security Boulevard, Mail Stop C3-01-20
Baltimore, Maryland 21244-1850
Telephone 410-786-3176 Facsimile 410-786-0043




**Office of the Attorney Advisor**

JUL 29 2005

**VIA CERTIFIED MAIL**

Ms. Joanne B. Erde, Esquire
Duane Morris LLP
201 South Biscayne Blvd., Suite 3400
Miami, FL 33131

Re: Rome Memorial Hospital, PRRB No. 2005-D42

Dear Ms. Erde:

Enclosed is a copy of the Administrator's decision in the above case vacating the decision of the Provider Reimbursement Review Board. This constitutes the final administrative decision of the Secretary of the Health and Human Services. Pursuant to Section 1878(f) of the Social Security Act and 42 CFR 405.1877, the Provider may obtain judicial review by filing a civil action within 60 days of receipt of this decision.

Sincerely yours,

Jacqueline R. Vaughn
Attorney Advisor

DATE RECEIVED
8/4/05

Enclosure

cc: Bernard M. Talbert, Esquire, Intermediary's Representative

# CENTERS FOR MEDICARE & MEDICAID SERVICES

## *Decision of the Administrator*

| | |
|---|---|
| **IN THE CASE OF:** | **CLAIM FOR:** |
| **Rome Memorial Hospital**<br>**Provider** | **Medicare Reimbursement**<br>**Fiscal Year Ending: 12/31/95** |
| **vs.** | **REVIEW OF:** |
| **Blue Cross and Blue Shield**<br>**Intermediary** | **PRRB Dec. No. 2005-D42**<br>**Dated: May 25, 2005** |

This case is before the Administrator, Centers for Medicare & Medicaid Services (CMS), for review of the Provider Reimbursement Review Board (Board) decision. The review is during the sixty-day period mandated in §1878(f)(1) of the Social Security Act (Act) [42 USC 1395oo(f)(1)], as amended. Comments were received from the Intermediary, requesting dismissal of the case for lack of jurisdiction. The parties were then notified of the Administrator's intention to review the Board's decision. The Provider submitted comments requesting affirmation of the Board's decision. Accordingly, the Board decision is now before the Administrator for final administrative review.

ISSUE AND BOARD DECISION

The issue is whether the Board properly accepted jurisdiction of the Provider's request for a hearing on the issue of whether it was entitled to additional disproportionate share (DSH) reimbursement for inpatient hospital days for which patients were eligible for Medicaid but not paid for by Medicaid (Medicaid-unpaid days).

The Majority of Board held that it properly had jurisdiction over the issue. The Majority stated that, upon issuance of its jurisdictional decision, the remaining issue to be resolved was determining the correct number of Medicaid-unpaid days

that the Provider was entitled to include in its DSH calculation. The Majority noted that, on November 8, 2004, it received a joint stipulation that the Provider rendered a total of 3,972 such days for the Provider's DSH calculation in FY 1995. The Majority found that this was a correct number for purposes of the DSH calculation. One Board member dissented without opinion.

## SUMMARY OF COMMENTS

The Intermediary requested that the Administrator reverse the decision in this case as the Board never properly had jurisdiction. The Intermediary pointed out that it issued the original notice of program reimbursement (NPR) for the Provider's FY 1995 on April 29, 1998. On July 23, 2001, it issued a revised NPR, which adjusted the Provider's DSH calculation to increase the number of additional inpatient hospital days for which patients were eligible for Medicaid and paid by Medicaid (Medicaid-paid days). However, the Provider appealed from the revised NPR, requesting an increase in Medicaid-unpaid days. The Intermediary stated that it then filed a motion to dismiss based on lack of jurisdiction, which was denied by the Board. The Intermediary pointed out that a revised NPR can be appealed only for the specific issue(s) addressed in the revised NPR. Since the revised NPR in this case did not include any adjustment to Medicaid-unpaid days, the Provider's appeal was invalid.

The Provider argued that it filed a valid appeal from the revised NPR, consistent with 42 CFR 405.1889, based on the subject addressed in the NPR, i.e., the number of days of care rendered to Medicaid beneficiaries to be included in the Provider's DSH calculation. The Provider maintained that there is no distinction in the DSH statute at §1886(d)(5)(F)(vi)(II) of the Act between Medicaid-paid and Medicaid-unpaid days for DSH purposes. The courts have uniformly concluded that it is irrelevant whether the eligible days were paid by Medicaid or not. In 2001, the court in Monmouth Medical Center v. Thompson[1] held that the language of §412.106(b)(4), which clarifies that all days of care, whether Medicaid-paid or Medicaid-unpaid, are to be included in the DSH calculation, applies to the cost year starting at the implementation of the statute.

Moreover, the Provider maintained that Medicaid eligibility verification was not readily available from the State of New York prior to the submission of its reopening request; thus, the Provider could not have included in its request Medicaid-unpaid days. Nevertheless, the Provider maintained that the Intermediary had a duty under the regulations at §405.1885(b), as held in Monmouth, to reopen

---

[1] 257 F.3d 807, 812 (D.C. Cir. 2001).

and adjust the cost report at issue even without the Provider's request. That regulation provides that CMS will reopen and revise an intermediary's determination if CMS notifies the intermediary that the determination is inconsistent with applicable law. The Provider stated that the court found that HCFAR 97-2, issued in February 1997, constituted such notice to the intermediary. The Provider observed that it requested the reopening in April 2001 and the Intermediary issued the revised NPR in 2001, years after HCFAR 97-2. The Intermediary had a properly reopened cost report in which it was adjusting the number of days of care that were rendered to eligible Medicaid beneficiaries; thus, the Provider asserted, the Intermediary had an affirmative duty to make the HCFAR 97-2 mandated adjustment as well.

Finally, the Provider argued that jurisdiction in this case also is proper under §405.1885(d), which requires a determination to be reopened or revised if it is established that the determination was procured by "fraud or similar fault of any party to the determination." In this case, the Provider argued, the Intermediary's failure to include the Provider's Medicaid-unpaid days in the calculation of the DSH percentage was equivalent to "'similar fault.'" With the NPR properly reopened in front of it, the Intermediary persisted in applying the same unlawful method of determination of the DSH amount. The Provider stated that courts have held that a misrepresentation by an intermediary as to whether costs were reimbursable was sufficient to require reopening under §405.1885(d).[2]

DISCUSSION

The entire record furnished by the Board has been examined, including all correspondence, position papers, exhibits, and subsequent submissions. All comments timely received have been considered and included in the record.

The Provider requested that the Intermediary reopen the fiscal year ending 1995 cost report by letter dated April 23, 2001, as follows:[3]

> We believe that the DSH Adjustment has not been properly calculated in accordance with the applicable Medicare regulation 42 CFR 412.106. The current Settlement is based on 3,170 Paid Medicaid Days plus 275 Medicaid HMO days totaling 3,445. We

[2] The Provider cited to Rochester Methodist Hospital v. Travelers Ins. Co., 728 F.2d 1006, 1018 (8th Cir. 1984); Ashland Regional Medical Center v. Shalala, 2 F.Supp. 675 (E.D. Pa. 1998); Loma Linda Univ. Medical Center v. Shalala, 1994 WL 465830 (D.C. Ca. 1994).

[3] See Intermediary Exhibit I-2.

requested, received, and enclosed a copy of the most recent NYS "Summary of Hospital Days by Year by Rate Code" report with run date of 11/02/99. It reflects a total of 3,292 Paid Medicaid Days plus 275 Medicaid HMO days yielding a corrected Total for Title XIX Days for DSH of 3,567 or 122 additional Paid Medicaid days. Therefore, please change the Disproportionate Share Adjustment amount on Worksheet E Part A Line 4 to $436,366.[4]

In response to the Provider's reopening request, the Intermediary issued a revised NPR on July 23, 2001, which adjusted the Provider's DSH payment to increase Medicaid-paid days as requested."[5] On July 30, 2001, the Provider filed an appeal from the revised NPR on the grounds that, "the Medicaid 'eligible' patient days as well as Medicaid 'paid' patient days [had] not been properly included in the DSH calculation."[6] The Intermediary and Provider subsequently issued a joint stipulation that the Provider rendered a total of 3,972 days of care to eligible Medicaid beneficiaries.[7]

Under §1886(d)(5)(F)(vi)(II) of the Act, calculation of the DSH payment requires the summing of two fractions. The numerator of one of these fractions requires the number of inpatient days of patients who "were eligible for medical assistance under a State plan." The implementing regulation was promulgated at §412.106, and in the final rule issuing the regulation, the Secretary explained that the "eligibility" language in the Act was meant by Congress to include only those days for which Medicaid benefits were payable.[8]

The Administrator, after reviewing the record and the relevant law, regulations, and governing criteria, believes that the Board acted improperly in accepting jurisdiction of the Provider's FY 1995 cost report. The effect of a revised NPR on a provider's right to a Board hearing is addressed in 42 CFR 405.1889. This regulation provides that "such revision shall be considered a separate and distinct

---

[4] Id.

[5] See Provider Exhibit P-1.

[6] See Intermediary Exhibit I-1.

[7] See Stipulation of Facts (undated), received by the PRRB on November 8, 2004.

[8] See 51 Fed. Reg. 31,454, 31460 (Sep. 3, 1986). As noted by the parties, this interpretation has been rejected by various courts, which led to the Secretary's issuance of HCFAR 97-2.

determination" for purposes of appeal. CMS has explained the meaning of "separate and distinct determination" in §2932B of the Provider Reimbursement Manual. This section refers to a revised NPR as a "separate and distinct determination" which gives a right to a hearing on the matters corrected by such determination. Thus, a revised NPR does not reopen the entire cost report to appeal. It merely reopens those matters adjusted by the revised NPR.

Addressing the Provider's arguments, the Administrator disagrees that Medicaid-paid and Medicaid-unpaid days are one issue under DSH. The Provider's reopening request itself reflects that the two types of Medicaid-related days have been considered separate factors of the DSH calculation. The Provider specifically failed to request that all eligible days be counted in the reopening. Rather, the Provider only requested an increase of Medicaid-paid days in its DSH calculation. Because the revised NPR at issue in this case did not address Medicaid-unpaid days, the Provider may not use the revised NPR as a basis for appeal of the unpaid Medicaid-eligible days.

## DECISION

Accordingly, the Administrator vacates the Provider Reimbursement Review Board decision. The Provider's request for a hearing before the Board is dismissed.

THIS CONSTITUTES THE FINAL ADMINISTRATIVE DECISION OF THE SECRETARY OF HEALTH AND HUMAN SERVICES.

Date: 1/25/05

Leslie V. Norwalk, Esq.
Deputy Administrator
Centers for Medicare & Medicaid Services